Paul ROLLISON, Jr., et al., Plaintiffs,

v.

Carroll W. BIGGS, et al., Defendants.

Civ. A. No. 80–165.

United States District Court,
D. Delaware.

June 29, 1983.

---

Douglas A. Shachtman, Wilmington, Del., for plaintiffs.

Barry M. Willoughby, Young, Conaway, Stargatt & Taylor, Wilmington, Del., for local defendants.

Regina M. Mullen, Dept. of Justice, Wilmington, Del., for state defendants.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

On April 14, 1980, plaintiffs, Paul Rollison, Jr. and Wanda Rollison, instituted this action on behalf of their minor son, Kyle Rollison, a handicapped child. The plaintiffs sought tuition reimbursement and other relief from the defendants[1] alleging violations of the following: the Education for All Handicapped Children Act ("EAHCA"), 20 U.S.C. § 1401 *et seq.;* the Rehabilitation Act, 29 U.S.C. § 794 *et seq.;* the Develop-

---

1. The defendants may be grouped in two sets. The first set includes: the State Board of Education; Kenneth C. Madden, individually and as Superintendent of Public Instruction; and the members of the State Board of Education in their official and individual capacities—Albert Jones, Richard Farner, Robert Allen, Henry Camper, Elsie Grossman, Kenneth Hilton, and Raymond Tomanetti. These defendants will be referred to as the "State Defendants." The second set of defendants includes: the New Castle County School District; the Board of Education of New Castle County School Dis-

mental Disabilities Assistance and Bill of Rights Act, 42 U.S.C. § 6000 *et seq.;* the Civil Rights Act, 42 U.S.C. § 1983; the due process and equal protection clauses of the Fourteenth Amendment of the United States Constitution; a provision of the Delaware Code dealing with education of handicapped persons, 14 *Del.C.* § 3124; and a provision of the Delaware Administrative Procedure Act, 29 *Del. C.* § 10128.[2]

The litigation proceeded for some eighteen months without significant court involvement until settlement during the course of briefing of plaintiffs' motion for summary judgment. On May 3, 1982 plaintiffs filed a motion for attorney's fees as a prevailing party. An evidentiary hearing was held on October 6 and 7, 1982 and the parties submitted post-hearing affidavits and proposed findings of fact and conclusions of law. For the reasons that follow, the motion for attorney's fees will be denied.

## I.  *Factual and Statutory Background*

The EAHCA is a funding statute whereby states receive federal funds to assist them in providing educational services for handicapped children.[3] Pursuant to the EAHCA, any state educational agency or unit receiving federal funds must establish and maintain procedures whereby handicapped children and their parents may protect their rights to a "free appropriate public education." 20 U.S.C. § 1415(d).

Kyle, a minor child with learning disabilities,[4] attended the Pilot School, a private

school designed to teach and treat handicapped children. During the school years 1977–78 and 1978–79 the State Board of Education paid Kyle's tuition and travel expenses. Payment during 1977–78 resulted from a decision of Hearing Examiner Dr. S. Reed Payne reversing a decision of the Mt. Pleasant School District denying tuition and travel expense reimbursement. Dkt. 8, at 114–19 (Hearing Examiner Decision). Dr. Payne ordered the Mt. Pleasant School District to develop, with the staff of the Pilot School, an appropriate individualized education plan ("IEP"), *id.* at 118, as required by the EAHCA. 20 U.S.C. §§ 1401(19), 1414(a)(5). Allegedly, an IEP was not developed. On April 9, 1979 plaintiffs contacted defendant Biggs seeking the continuation of private placement tuition at the Pilot School for the 1979–80 school year. Dkt. 8, at 64 (Letter from Paul M. Rollison, Jr. to Carroll W. Biggs). Such a request was to be considered initially by the Area Identification Placement Review Dismissal Committee ("IPRD"). Due to the fault of all parties, the IPRD meeting was not completed in a timely manner so as to receive State Board approval and consequent prompt action by the State Department of Public Instruction. When the IPRD meeting was held, the committee rejected the plaintiffs' application and decided to change Kyle's placement to the public Faulk Road School—a totally segregated facility for handicapped children. Dkt. 8, at 137–38 (IPRD Staff Conference Minutes, September 14, 1979).

Section 1415(b)(1)(E) requires the state to provide "an opportunity to present com-

trict; and Carroll W. Biggs, individually and as Superintendent of the New Castle County School District. These defendants will be referred to as the "Local Defendants."

**2.** At the time of the complaint, this provision was codified at 29 *Del.C.* § 6428.

**3.** For a general description of the EAHCA's statutory scheme, see *Board of Education v. Rowley,* —— U.S. ——, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982); Note, *Enforcing the Right to an Appropriate Education: The Education for All Handicapped Children Act of 1975,* 92 Harv.L.Rev. 1103 (1959).

**4.** At this juncture, there appears to be no dispute regarding Kyle's handicapped status. He apparently has auditory and visual perception problems, with concomitant fine and gross motor disfunction and immature behavior. Certified Record of Administrative Proceedings Below, Docket Item ("Dkt.") 8, at 146 (Due Process Hearing Report, New Castle County School District, Findings of Fact). Accordingly, Kyle's learning disability may be considered a "complex" handicapping condition under 14 *Del.C.* § 3124. *Id.* at 117 (Hearing Examiner Decision).

plaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." Upon receipt of such a complaint, the parents must be accorded an "impartial due process hearing" by the local agency. 20 U.S.C. § 1415(b)(2). After such a hearing, the parents may seek review of the local agency's decision by an impartial state level review officer. 20 U.S.C. § 1415(c). Finally, judicial review is guaranteed to any party aggrieved by the final decision of the state level agency. 20 U.S.C. § 1415(e)(2).

The Rollisons pursued their interests through the above procedure. The local hearing officer denied the plaintiffs' request that Kyle be declared eligible for financial aid. The Rollisons appealed this decision and the state level review officer, an employee of the State Department of Public Instruction, affirmed the decision of the hearing officer. Dkt. 8, at 162 (State Level Review Officer's Report).

Having exhausted their administrative remedies, the plaintiffs filed the instant action. During the briefing on plaintiffs' motion for summary judgment in May of 1981, the parties reached a settlement whereby the State Defendants would reimburse plaintiffs for tuition and transportation costs for the 1979–80 school year. The State Defendants agreed to settle the action due to the holdings in *Grymes v. Madden (Grymes II)*, No. 78–105 (D.Del. Jan. 7, 1981), *aff'd*, 672 F.2d 321 (3d Cir.1982). In *Grymes II* the court held that the state must provide interim funding pursuant to section 1415(e) of the EAHCA for private placement during the pendency of the litigation regardless of the merits of the underlying claim, and that the use of state level review officers employed by the education agency violated the EAHCA requirement that plaintiffs be afforded a hearing before an impartial hearing officer.

In March 1982 a Stipulation and Order was entered dismissing the action with prejudice as to every claim against both the State Defendants and Local Defendants except claims for attorney's fees. Dkt. 34. Under the terms of the stipulation, the State Defendants agreed to pay plaintiffs the sum of $4829 plus 6 percent annual interest from the filing of the complaint. *Id.* Local Defendants agreed to pay nothing to the plaintiffs. At this juncture, plaintiffs seek in excess of $40,000 for attorney's fees including fees incurred with respect to the litigation of the current motion for attorney's fees. Both the State Defendants and the Local Defendants oppose the motion on grounds which fall into three basic categories: first, there is no statutory basis for the award of fees; second, even if the Court could award fees, the plaintiffs are not entitled to fees because they are not prevailing parties; and third, even if the plaintiffs are prevailing parties, the requested fees are subject to substantial reduction.

## II. *Discussion*

While plaintiffs raised a plethora of statutory and constitutional grounds as a basis for relief in their complaint, the arguments asserted in support of their summary judgment motion focused on the EAHCA. Dkt. 17, at 7–34. Substantial reliance was placed upon section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("section 504"). Only tangential mention of other statutes and constitutional provisions was made. Furthermore, the briefing on the motion for attorney's fees has focused on the EAHCA, section 504, and the Civil Rights Act, 42 U.S.C. § 1983 ("section 1983"), which encompasses statutory and constitutional provisions. While there has been significant judicial inspection of the interplay of these three grounds in the recent past, on the whole, the case law is mired in confusion. Finding no binding precedent from the Supreme Court or the Court of Appeals for the Third Circuit, the Court undertakes the ensuing foray into the morass.

### A. *The EAHCA*

Pursuant to the so-called "American Rule," attorney's fees are not recovera-

ble unless a specific statute or enforceable contract provides for such a recovery. *Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Summit Valley Industries, Inc. v. Local 112, United Brotherhood of Carpenters and Joiners of America,* 456 U.S. 717, 102 S.Ct. 2112, 72 L.Ed.2d 511 (1982); *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). The EAHCA itself does not provide for an award of attorney's fees. *See Smith v. Cumberland School Committee,* 703 F.2d 4, 7 (1st Cir.1983); *Hymes v. Harnett County Board of Education,* 664 F.2d 410, 412 (4th Cir.1981). Consequently, the plaintiffs may not recover attorney's fees under the EAHCA and must, therefore look elsewhere.

### B. *The Rehabilitation Act*

The Rollison allege that they are entitled to attorney's fees pursuant to section 505(b) of the Rehabilitation Act. 29 U.S.C. § 794a(b) ("section 505(b)").[5] Section 505(b) allows the grant of attorney's fees whenever a party presents a substantial section 504[6] claim even if a settlement takes place prior to adjudication. *United Handicapped Federation v. Andre,* 622 F.2d 342, 345–46 (8th Cir.1980). The question for resolution is whether section 504 creates a substantial claim in this case.

Attorney's fees under section 505(b) could only be available if section 504 creates a

private cause of action. The existence of such a right is questionable.[7] While the Third Circuit Court of Appeals has implied a private cause of action pursuant to section 504, *see Tokarcik v. Forest Hills School District,* 665 F.2d 443, 449 n. 8 (3d Cir.1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 3508, 73 L.Ed.2d 1383 (1982); *NAACP v. Medical Center, Inc.,* 599 F.2d 1247, 1258–59 (3d Cir.1979), recent dicta by the Supreme Court suggests otherwise. *See Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 27, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (1981); *see also Smith v. Cumberland School Committee,* 703 F.2d at 9. *But cf. Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) (finding implied private cause of action under identical language in Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a)). The Court need not reach this issue, however, because even assuming the existence of such a private cause of action, attorney's fees are unavailable in this particular context.

This result is dictated when the two statutes, the EAHCA and section 504, converge. Section 504 is a generalized prohibition against discriminatory treatment of handicapped persons. This must be juxtaposed against the very specific and limited coverage of the EAHCA which applies only to the education of handicapped children. As such, the generalized remedies of section

---

**5.** That section provides as a remedy, "In any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

**6.** Section 504 provides, in part:
No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.
29 U.S.C. § 794.

**7.** Several circuit courts have implied a cause of action under section 504. *See Miener v. Mis-*

*souri,* 673 F.2d 969 (8th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 215, 74 L.Ed.2d 171 (1982); *Pushkin v. Regents of the University of Colorado,* 658 F.2d 1372 (10th Cir.1981); *Kling v. County of Los Angeles,* 633 F.2d 876 (9th Cir. 1980); *Adashunas v. Negley,* 626 F.2d 600 (7th Cir.1980); *United Handicapped Education v. Andre,* 622 F.2d at 347; *Camenisch v. University of Texas,* 616 F.2d 127 (5th Cir.1980), *vacated on other grounds,* 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981); *Coleman v. Darden,* 595 F.2d 533, 538 (10th Cir.), *cert. denied,* 444 U.S. 927, 100 S.Ct. 267, 62 L.Ed.2d 184 (1979); *Davis v. Southeastern Community College,* 574 F.2d 1158 (4th Cir.1978), *rev'd on other grounds,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979); *Kampmeier v. Nyquist,* 553 F.2d 296 (2d Cir.1977).

504 cannot be utilized to circumvent the specifically enumerated administrative procedures of the EAHCA if the more specific act is applicable. *See Turillo v. Tyson,* 535 F.Supp. 577, 585 (D.R.I.1982). Such a result implements the congressionally mandated requirement that state and local public education officials, and not the courts, initially review the merits of a plaintiff's claim to a free appropriate education.

Under the above analysis, the original question becomes more sharply focused—have the plaintiffs articulated a section 504 claim which is independent of their EAHCA claim? The quest for the answer to this question begins with a review of *Southeastern Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979). In *Davis,* in examining the scope of section 504, the Supreme Court determined that the reach of the statute was necessarily circumscribed. According to the Supreme Court, Congress recognized "the distinction between the evenhanded treatment of qualified handicapped persons and affirmative attempts to overcome the difficulties caused by handicaps." *Id.* at 410, 99 S.Ct. at 2369. Construing the language of section 504 and other portions of the Rehabilitation Act, the Supreme Court concluded that section 504 does not impose either "affirmative obligations" or "undue" financial or administrative burdens on recipients of federal funds. *Id.* at 410–12, 99 S.Ct. at 2369–70.

The Supreme Court has not yet had occasion to address the applicability of section 504 in a variety of contexts. Some courts have found that the Rehabilitation Act guarantees handicapped children a free appropriate education. *See S–1 v. Turlington,* 635 F.2d 342, 347 (5th Cir.), *cert. denied,* 454 U.S. 1030, 102 S.Ct. 566, 70 L.Ed.2d 473 (1981); *Patsel v. District of Columbia Board of Education,* 530 F.Supp. 660, 665–66 (D.D.C.1982); *Association for Retarded Citizens*

*v. Frazier,* 517 F.Supp. 105, 118–19 (D.Colo. 1981); *New Mexico Association for Retarded Citizens v. New Mexico,* 495 F.Supp. 391, 396 (D.N.M.1980),[8] *rev'd,* 678 F.2d 847 (10th Cir.1982). I, however, concur with the reasoning of *Turillo v. Tyson,* in which Chief Judge Pettine stated:

> I fail to see how, after *Davis,* § 504 can be construed to guarantee a free appropriate public education to all handicapped children, no matter what their individual needs are. *Accord, McGowen v. Hahn,* C.A. No. 78C433 (N.D.Ill. July 27, 1981) ("[T]he mere failure to provide special education services is not sufficient to state a claim under § 504.") *Davis* may not have provided lower courts with all the guidance they need, but it surely was clear on one point: § 504 is a non-discrimination statute, not a mandate for affirmative action. This does not mean that § 504 is confined to those instances where school systems invidiously discriminate against handicapped individuals by, for example, refusing to allow an otherwise qualified blind child to attend school. It does mean, though, that courts must find a way to limit the reach of § 504 consistent with the holding of *Davis.*

535 F.Supp. at 587.

The court went on to utilize a two-tier analysis to determine the application of section 504: first, section 504 only requires federal fund recipients to furnish handicapped persons with the same facilities, services, and programs provided to non-handicapped; and second, even if the handicapped person is not being treated in the same fashion, the recipient need only alleviate the discrimination if undue financial or administrative burdens are not involved. *Id.* at 587–88.

■ While this formulation appears consistent with *Davis,* it is unnecessary, at this

---

**8.** These cases rely, in large measure, on the administrative regulations implementing section 504. *See* 45 C.F.R. Part 84. It is axiomatic, however, that regulations cannot grant more than that which Congress intended in enacting

section 504. *See University of Texas v. Camenisch,* 451 U.S. 390, 399, 101 S.Ct. 1830, 1836, 68 L.Ed.2d 175 (1981) (Burger, C.J., concurring); *Southeastern Community College v. Davis,* 442 U.S. at 411–12, 99 S.Ct. at 2369–70.

juncture, to adopt or reject its application. Given that Kyle had available to him a public school education at the Faulk Road School, the State Defendants and Local Defendants cannot be required to finance a private education placement under section 504. *See Kruelle v. New Castle County School District,* 642 F.2d 687, 695 (3d Cir. 1981). *Contra Department of Education v. Katherine D.,* 531 F.Supp. 517, 528–31 (D.Haw.1982). While such relief is available under the EAHCA, at most, section 504 could only require the school system to modify its schools to accommodate handicapped children.

◼ Under such circumstances where the plaintiffs have sought nothing which could be granted by section 504 and not by the EAHCA, attorney's fees pursuant to section 505(b) cannot be recovered.[9] Plaintiffs, through artful pleadings, should not be afforded the recovery of fees under a more generalized statute when the specifically applicable statute makes no provision for such recovery.[10]

## C. *Section 1983*

Section 1983 of the Civil Rights Act creates no substantive rights by its terms; rather, it is a remedial statute which holds individuals and some entities liable for violations of statutory and constitutional rights under color of state law. *See e.g. Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979); *Gonzalez v. Young,* 560 F.2d 160 (3d Cir.1977), *aff'd,* 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). Attor-

ney's fees are available pursuant to section 1988 for actions brought under section 1983. 42 U.S.C. § 1988. Plaintiffs' claim for attorney's fees under section 1983 has two facets: first, section 1983 is available for violations of substantive EAHCA rights; and second, section 1983 is available for violations of plaintiffs' rights under the due process and equal protection clauses of the Fourteenth Amendment.

◼ As a law of the United States, the EAHCA comes within the ambit of section 1983. *See Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). Where, however, the statute itself sets forth sufficiently comprehensive remedial devices, such a legislative scheme indicates a congressional intent to preclude enforcement suits pursuant to section 1983. *Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). The EAHCA's remedial devices and intricate administrative procedures designed to protect the rights of handicapped children have been set forth earlier. *See supra* page 966. Furthermore, states failing to comply with provisions requiring the filing of compliance plans with the Commissioner of Education are subject to the withholding of federal funds from the state educational agency. 20 U.S.C. § 1416(b). As such, the congressional intent to enforce EAHCA provisions through these organic measures rather than section 1983 is evident. Consequently, the Rollisons may not recover attorney's fees pursuant to section 1988 because no statutory cause of action under

---

9. Several courts, however, have awarded fees pursuant to section 505(b) for claims alleging violation of section 504 and the EAHCA. *See e.g., Pratt v. Board of Education of Frederick Co.,* 674 F.2d 259 (4th Cir.1982); *S–1 v. Turlington,* 635 F.2d 342; *Department of Education v. Katherine D.,* 531 F.Supp. 517; *Patsel v. District of Columbia Board of Education,* 530 F.Supp. 660; *Association for Retarded Citizens v. Frazier,* 517 F.Supp. 105; *Tatro v. State of Texas,* 516 F.Supp. 968 (N.D.Tex.1981); *aff'd on other grounds,* 703 F.2d 823 (5th Cir.1983).

10. Several courts have adopted this reasoning. *See Smith v. Cumberland Co. School Comm.,* 703 F.2d at 9–10; *Monahan v. State of Nebraska,* 687 F.2d 1164, 1171 (8th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1252, 75 L.Ed.2d 481 (1983); *Noe v. Ambach,* 542 F.Supp. 70, 72 (S.D.N.Y.1982); *Colin K. v. Schmidt,* 536 F.Supp. 1375, 1388 (D.R.I.1982); *Turillo v. Tyson,* 535 F.Supp. at 585–87; *Hines v. Pitt Co. Bd. of Educ.,* 497 F.Supp. 403, 409 (E.D.N.C.1980).

section 1983 exists.[11] *See Hymes v. Harnett County Board of Education,* 664 F.2d 410, 412–13 (4th Cir.1981); *Smith v. Cumberland School Committee,* 703 F.2d at 8; *Anderson v. Thompson,* 658 F.2d 1205, 1215–16 (7th Cir.1981); *Noe v. Ambach,* 542 F.Supp. at 73; *Tatro v. Texas,* 516 F.Supp. at 981–84. *But see Monahan v. Nebraska,* 687 F.2d at 1171–72; *Robert M. v. Benton,* 671 F.2d 1104, 1106 (8th Cir.1982); *Doe v. Marshall,* 622 F.2d 118, 120 (5th Cir.1980), *cert. denied,* 451 U.S. 993, 101 S.Ct. 2336, 68 L.Ed.2d 855 (1981).

The constitutional grounds asserted by the plaintiffs pose more significant problems. Initially it must be recognized that a court "will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of." *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1941) (Brandis, J., concurring). Consequently, the plaintiffs must only show that they have presented a "substantial" constitutional claim. They need not demonstrate that they prevailed on the substance of the claim. *Maher v. Gagne,* 448 U.S. 122, 132, 100 S.Ct. 2570, 2576, 65 L.Ed.2d 653 (1980);[12] *cf. Hagans v. Lavine,* 415 U.S. 528, 537–38, 94 S.Ct. 1372, 1379–80, 39 L.Ed. 577 (1974) (a "substantial" claim for purposes of federal jurisdiction is one which is not inescapably frivolous under previous decisions). From this twilight

zone of uncertainty, the Court is thrust into a virtual fantasy world because the litigation settled before any disposition of the merits. The Court, therefore, finds itself in the absurd position of considering the constitutional claims in the surreal milieu of a motion for attorney's fees for claims that were neither fully developed nor considered by this Court in a decision on the merits.

Plaintiffs raise two distinct constitutional claims: first, that defendants have violated the equal protection clause of the Fourteenth Amendment by denying Kyle a free appropriate education; and second, that defendants have violated the due process clause of the Fourteenth Amendment by failing to utilize an impartial review officer. Under the *Hagans* test, at least the equal protection claim would support a finding of "substantiality" sufficient to support federal question jurisdiction.[13] In such a situation the Supreme Court, in quoting the legislative history of section 1988 stated:

> In some cases, however, the claim with fees may involve a constitutional question which the courts are reluctant to resolve if the non-constitutional claim is dispositive. In such cases, if the claim for which fees may be awarded meets the 'substantiality' test, attorney's fees may be allowed even though the court declines to enter judgment for the plaintiff on that claim, so long as the plaintiff prevails on the non-fee claim arising out of a 'common nucleus of operative fact.'

**11.** It is possible to view section 504 of the Rehabilitation Act as constituting a valid section 1983 cause of action because the remedial measures are not as pervasive as those contained in the EAHCA. *See Turillo v. Tyson,* 535 F.Supp. at 584 n. 8. The standard for the award of fees under section 1988 and section 505(b) is presumably the same. Since the Court has held that fees under the latter provision are unavailable, *see supra* pages 969–970, the former need not be addressed.

**12.** The situation in *Maher* is strikingly similar to the case at bar in that it too concerned a case where settlement was reached before disposition on the merits.

**13.** The due process claim, however, suffers a dubious status and may not be "substantial."

While the EAHCA, as construed by cases such as *Grymes II,* requires that the final administrative hearing or review must be conducted by an individual not employed by the state or local educational bureaucracy, such a holding is not constitutionally mandated. Clearly the Rollisons could have obtained a constitutionally impartial administrative hearing by the procedures followed by the State Department of Public Instruction. *See Wolff v. McDonnell,* 418 U.S. 539, 571, 94 S.Ct. 2963, 2982, 41 L.Ed.2d 935 (1973) (review committee sufficiently impartial to satisfy due process requirements although members employed by same institutions whose procedures and decisions are challenged).

*Maher v. Gagne,* 448 U.S. at 132–33 n. 15, 100 S.Ct. at 2576 n. 15 (quoting H.R.Rep. No. 94–1558, p. 4, n. 7 (1976)) (citations omitted).

A strong argument may be made that *Maher* dictates only two results: first, that the district court consider the merits of the constitutional claim to determine if the plaintiff would have prevailed and thereby be entitled to attorney's fees; or second, in the exercise of discretion, the district court may decline to consider the constitutional claim but must award fees. This interpretation, however, appears directly contradictory to the statutorily required finding that the party prevailed on a claim in order to justify the award of fees under section 1988. The "substantiality" test fails to provide an adequate basis for analysis because it is not difficult to construct a scenario where a constitutional claim may be substantial enough to support jurisdiction yet may not support judgment in favor of the plaintiff. In fact, the equal protection claim in this case may well represent such a situation.[14] Nonetheless, in this context, disposition of a motion for attorney's fees in a case where there has been neither development nor adjudication of the constitutional claims, I feel it inappropriate and therefore decline to undertake such an analysis of the merits of the constitutional claim.

The Supreme Court in *Maher* recognized the latitude governing this Court's discretion in such an instance. Just as a district court might decline to consider the constitutional claim yet may award attorney's fees,

the necessary correlative to such permissive language is that it may not award attorney's fees if the situation justifies such a discretionary denial. *See Maher v. Gagne,* 448 U.S. at 132–33, n. 15, 100 S.Ct. at 2576, n. 15. I believe a middle course is appropriate in this context because the constitutional claims grow from the same factual basis as the EAHCA claim which cannot support an award of attorney's fees. A recent pronouncement of the Court of Appeals for the First Circuit in a virtually factually identical case is instructive. The court stated:

> [T]hat the section 1983 claims alleged here are based upon independent constitutional violations rather than violations of the EAHCA itself is immaterial. The constitutional claims alleged here, a denial of due process and a denial of a free appropriate public education to Thomas because of his handicap, are factually identical to the EAHCA claims. Indeed, in enacting the EAHCA Congress sought to ensure that handicapped children receive the very "rights" that plaintiffs claimed were constitutional under section 1983. *See* S.Rep. No. 168, 94th Cong., 1st Sess. 6–7, *reprinted in* 1975 U.S.Code Cong. & Ad.News 1425, 1430–31 (legislation said to be designed to enable states to fulfill their constitutional obligations to handicapped children). Thus, the only difference between the statutory and constitutional claims is that the former carries with it a far more favorable legal standard for the plaintiffs and enabled them to prevail on what would otherwise have been fairly questionable claims. Be-

---

14. The equal protection analysis would necessarily proceed as follows: since there is no fundamental right to public education, *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 44, 93 S.Ct. 1278, 1302, 36 L.Ed.2d 16 (1973), strict scrutiny could be utilized only if handicapped children constitute a suspect class. Several courts have applied the traditional rational relation test upon finding that handicapped children do not constitute a suspect class. *See Colin K. v. Schmidt,* 536 F.Supp. 1375, 1388 (D.R.I.1982); *Turillo v. Tyson,* 535 F.Supp. at 582; *Sherer v. Waier,* 457 F.Supp. 1039, 1048 (W.D.Mo.1978); *Doe v. Koger,* 480 F.Supp. 225, 230 (N.D.Ind.1979). Pur-

suant to such an analysis, plaintiffs could prevail on their equal protection claim only if, first, they were deprived of an educational experience or opportunity granted non-handicapped children and furthermore, such deprivation had no rational basis. Here the plaintiffs seemingly cannot satisfy the former prong because Kyle has not been prevented from attending the public school system. Moreover, given this context of a motion for attorney's fees, I decline to make any holding with respect to whether handicapped children constitute a suspect class.

cause Congress, in providing statutory remedies for the same factual complaints, did not authorize attorneys' fees for such actions, we do not believe that section 1988 is a sufficient basis for the granting of attorneys' fees here. Plaintiffs' mere recitation of a section 1983 claim cannot create a right to attorneys' fees in litigation as to which Congress, perhaps recognizing the shortness of school funds, has not seen fit to make a special award. *Cf. Scruggs v. Campbell,* 630 F.2d 237 (4th Cir.1980) (plaintiffs cannot evade EAHCA's exhaustion requirements merely by reciting section 1983 in their complaint). If this were not so, attorneys' fees would become available in almost every case by the mere incantation of section 1983. *See Civil Rights Attorney's Fees in Cases Resolved on State Pendent and Statutory Grounds,* 130 U.Pa.L.Rev. 488, 518 (1981). *Smith v. Cumberland School Committee,* 703 F.2d at 8–9.

In the current context, therefore, attorney's fees are not available for a constitutional claim brought pursuant to section 1983 when the plaintiffs seek no more than the EAHCA grants.[15]

### III. *Conclusion*

Finding no statutory basis to justify the award of fees, the Court need not consider either the questions of whether the plaintiffs were prevailing parties, or which claims the plaintiffs prevailed upon. In like vein, the Court need not consider questions involved when fees are sought for legal work performed in both administrative and judicial proceedings. *Compare NAACP v. Wilmington Medical Center, Inc.,* 689 F.2d 1161 (3d Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1499, 75 L.Ed.2d 930 (1983) (allowing fees for administrative proceedings undertaken before litigation) *with Latino Project, Inc. v. City of Camden,* 701 F.2d 262 (3rd Cir.1983) (disallowing fees for

party who prevailed at the administrative level and therefore instituted no litigation). Similarly, the exhaustive analysis of the factors set forth in *Lindy Bros., Inc. · v. American Radiator and Standard Sanitary Corp.,* 540 F.2d 102 (3d Cir.1976) (en banc), and its progeny regarding reasonableness of hours and compensation, need not be undertaken.

While the result in this case might appear harsh, and certainly compelling public interests would support the ability to recover attorney's fees in this scenario, it must be kept firmly in mind that such a determination rests solely within the province of Congress—not the courts. The legislative branch clearly knew how to accomplish this goal and could have done so by inserting a provision for attorney's fees in the EAHCA.[16] Congress, however, chose not to provide for such recovery. Absent a clear statutory provision, this Court will neither condone the invasion of the legislative sphere, nor permit circumvention by artful pleading.

---

**15.** This holding, of course, does not consider the situation where the relief requested is unavailable pursuant to the EAHCA. For example, fees may be available for the efforts expended in obtaining a preliminary injunction—a remedy unavailable under the statute. *See Hymes*

*v. Harnett County Board of Education,* 664 F.2d at 413.

**16.** Approximately seventy-five statutes have attorney's fees provisions. *See* 80 Colum.L. Rev. 346, 348 n. 20 (1980).